UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

IN RE:                                                    )
                                                          )
Ronald Allen Brewer and                                   ) Case No. 14-30709-can7
Teresa Ann Brewer,                                        )
    Debtors.                                              )
_____                   )

**MEMORANDUM OPINION GRANTING TRUSTEE'S OBJECTION TO EXEMPTION**

When a husband and wife own a Missouri home as exempt "tenancy by the entirety" property, but transfer the home into a spousal trust that expressly allows either spouse to unilaterally partition and sell the trust assets, does the transfer sever the tenancy and defeat the exemption? Under the circumstances of this case, the answer is yes.

*Jurisdiction*

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334(a), 157(a), and 157(b)(1). Because this is a dispute to determine exemptions from the bankruptcy estate, it is a core proceeding. 28 U.S.C. § 157(b)(2)(B); 11 U.S.C. § 522.

*Findings of Fact*

This matter was submitted to the Court based on exhibits, briefs, and argument. The parties do not dispute the pertinent facts.

Ronald and Teresa Brewer are married, Missouri residents. They filed their joint Chapter 7 bankruptcy petition on December 5, 2014. Norman E. Rouse was duly appointed as Chapter 7 Trustee.

On their Schedule A, the Brewers listed ownership in a home, valued at $220,000, in Carl Junction, Missouri. They claimed the entire value of their home exempt on their Schedule C

under the doctrine of tenancy by the entireties ("TBE").[1] The home is encumbered by a first deed of trust in the amount of $185,531, leaving $34,469 of equity in the home. The Brewers' schedules reflect numerous creditors, the majority of which are debts owed by either Mr. or Mrs. Brewer individually. The Brewers listed one joint creditor, Freeman Hospital, in the amount of $1,567.39. The Trustee timely objected to the TBE exemption in the Brewers' Missouri home, arguing that the Brewers severed the TBE protection when they conveyed the home into a revocable trust before filing bankruptcy.

The facts regarding the trust are undisputed. Three months before filing bankruptcy, the Brewers created the BREWER TRUST DATED SEPTEMBER 10, 2014 ("BREWER TRUST"). The BREWER TRUST designates the Brewers as settlors, co-trustees, and primary beneficiaries. The same day the BREWER TRUST was created, the Brewers transferred title to their home from themselves as TBE to themselves as co-trustees of the BREWER TRUST by special warranty deed. Before the transfer, the home was undeniably TBE property under Missouri law. There was no evidence presented about why the Brewers created the BREWER TRUST or chose to transfer their home into it.[2]

It is also undisputed that the Brewers were attempting to avail themselves of a Missouri statute establishing a "qualified spousal trust," or QST. RSMo § 456.950. Under the version of § 456.950 in effect when the BREWER TRUST was created, TBE property transferred into a valid QST is deemed to remain TBE property, under certain conditions.[3] The express terms of the BREWER TRUST will be discussed in more detail below. But the BREWER TRUST in

---

[1] See 11 U.S.C. § 522(b)(3)(B) (providing an exemption in TBE property to the extent it is exempt under applicable nonbankruptcy law). It is undisputed that Missouri recognizes the TBE doctrine.

[2] The suggestion in one of the Brewers' briefs was that this estate planning was driven by some medical concerns, but there was no affidavit, testimony, or other evidence regarding the Brewers' intent.

[3] As will be discussed below, RSMo § 456.950 (effective Aug. 28, 2014) was amended shortly after the Brewers filed bankruptcy, and now provides, among other changes, that *any* property transferred into a QST is protected by TBE.

2

particular contains some of the features of a QST under RSMo § 456.950. For example, the BREWER TRUST provides that either or both of the Brewers may exercise dominion and control over any and all of the trust assets, and that the trust assets pass to the survivor upon death.

Notably, however, the trust agreement also provides that each spouse "shall have the right to partition, enabling each grantor to restrict, transfer, or withdraw one-half of the assets in this trust." It is this provision that the Chapter 7 Trustee relies on in arguing that the Brewers severed the TBE when they transferred their home into the BREWER TRUST, such that he should be able to liquidate the nonexempt equity for the benefit of all the creditors of the estate, not just the single joint creditor.

*Discussion*

The Trustee argues that the Brewers severed the TBE when they transferred their home to the BREWER TRUST because the BREWER TRUST is not a valid QST. Specifically, the Trustee argues that retaining a right to partition and withdraw one-half of the trust assets renders the BREWER TRUST ineligible for QST protection. The Trustee also argues that even if the TBE was not severed upon its transfer into the BREWER TRUST, the Brewers' right to partition is property of the bankruptcy estate and thus a right he may exercise. The Brewers counter that the BREWER TRUST is a valid QST, such that the home retained its TBE exemption notwithstanding the transfer. The Brewers also argue that the Trustee waived his right to challenge the exemption, contending that the Trustee stipulated that the BREWER TRUST is a valid QST.

*Did the Trustee Stipulate that the BREWER TRUST is a Valid QST?*

Addressing the waiver argument first.

The Brewers argue that the Trustee stipulated the BREWER TRUST is a valid QST, and is thus precluded from arguing otherwise. The Court disagrees.

The Court finds as a factual matter that the Trustee did not stipulate[4] that the BREWER TRUST is a valid QST. The Trustee's objection to the exemption squarely challenged whether the BREWER TRUST was a QST, and the Brewers' response to the objection acknowledges as much. At the hearing, it is true that the Trustee at one point appeared to concede that the BREWER TRUST was a QST, but later he stated he wanted to brief the issue. The Brewers did not object at that time and argue that briefing was unnecessary due to a stipulation. Rather, the record is devoid of any mention of the words agreement or stipulation, except with respect to admitting the Trustee's exhibits and agreeing to present the matter without testimony. The record, in sum, belies the Brewers' argument that the Trustee stipulated to the BREWER TRUST's validity and thus waived his ability to pursue the objection.

In any event, even if the Trustee had stipulated that the BREWER TRUST is a QST, the stipulation would not be binding on this Court. The issue of whether the BREWER TRUST meets the statutory requirements of the Missouri QST statute, RSMo § 456.950, is not a question of fact, but a question of law.  Courts are bound by stipulations of the parties regarding questions of fact. *Gander v. Livoti*, 250 F.3d 606, 609 (8th Cir. 2001) (citing *Burstein v. United States*, 232 F.2d 19, 23 (8th Cir. 1956)). But stipulations of law are not binding on the Court. *Gander*, 250 F.3d at 609 (citing *Sanford's Estate v. Comm'r of IRS*, 308 U.S. 39, 51 (1939)). Thus, the Court is not precluded from considering the status of the BREWER TRUST. *See, e.g.*, *Kempton v.*

---

[4] Oral stipulations made at hearings can have the same effect as written stipulations. *See United States v. 3,788.16 Acres of Land*, 439 F.2d 291, 294–96 (8th Cir.1971).  The harsh effect of a stipulation is to bind the parties throughout the remainder of the litigation, and the corollary is that a stipulation must be "voluntarily made and fairly entered into." *Skeets v. Johnson*, 816 F.2d 1213, 1215 (8th Cir.1987) (citations omitted). One purpose of stipulations is to reduce the proof needed at trial. *Sims v. Wyrick*, 743 F.2d 607, 610 (8th Cir.1984).

*Dugan*, 224 S.W.3d 83, 86 (Mo. Ct. App. 2007) (interpretation of trust documents is a legal, not factual, issue); *Lehr v. Collier*, 909 S.W.2d 717, 723 (Mo. Ct. App. 1995) (same) (citations omitted from both).

### *Nature of TBE Property Under Missouri Law*

Turning to the merits: The parties agree that Missouri residents may claim TBE property as exempt in bankruptcy cases,[5] and that the burden of proof is on the Trustee. Fed. R. Bankr. P. 4003(c); *Peoples' State Bank of Wells v. Stenzel (In re Stenzel)*, 301 F.3d 945, 947 (8th Cir. 2002). The parties further agree about the essential nature of TBE property, which is a form of marital property ownership originally created by common law, not by statute. *In re Bellingroehr*, 403 B.R. 818, 820 (Bankr. W.D. Mo. 2009). If the Brewers' home is exempt as TBE property, then the Chapter 7 Trustee may invade the equity only to the extent necessary to satisfy any joint creditors. *In re Haines*, 528 B.R. 912, 919–920 (Bankr. W.D. Mo. 2015), aff'd, *Strauss v. Haines*, 2015 WL 5136367 (W.D. Mo. Sept. 1, 2015).

TBE is based upon the "ancient common law principal that, upon marriage, each spouse loses his or her individual identity, and the two people become one entity." *Bellingroehr*, 403 B.R. at 820. To create a TBE estate, the four unities – unities of interest, title, time and possession – must be present. Once created, TBE tenants have but one estate, which they hold "*per my et per tout*—by the moiety or half *and* by the whole." *In re Gerling's Estate,* 303 S.W.2d 915, 917 (Mo. 1957) (emphasis added). Since the estate is held both by the half and the whole, neither spouse may unilaterally convey or burden the property. *In re King's Estate*, 572 S.W.2d 200, 211 (Mo. Ct. App. 1978).

---

[5] For general background about bankruptcy and exemptions, and Missouri being an "opt-out" state, see *In re Benn*, 491 F.3d 811, 813 (8th Cir. 2007); *In re Haines*, 528 B.R. 912 (Bankr. W.D. Mo. 2015).

5

A TBE interest may, however, be severed by agreement, actual or implied, or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interests as belonging to them in common. *In re Bellingroeher*, 403 B.R. at 821. When a TBE estate is severed, the result is a tenancy in common. *In re Stanke*, 234 B.R. 439, 442 n.6 (Bankr. W.D. Mo. 1999) (cites omitted). The effect of severance in this case would be to render the equity nonexempt, such that the Trustee could liquidate the property for the benefit of the estate.

***Effect of TBE Property Being Transferred into a Trust***

Several bankruptcy cases have dealt with the issue of when conveyance of TBE property into a revocable trust results in a severance. In the *Stanke* case, Judge Venters held that the husband and wife debtors severed their TBE estate when they transferred the TBE property into two separate trusts; each trust included specific language evidencing the debtors' intent to convert their TBE property into property held as tenants in common. *Stanke*, 234 B.R. at 446.

By contrast, Judge Federman concluded in *Bellingroeher* that that transfer of TBE property into a revocable trust did not sever the TBE, when the trust provided that neither spouse could revoke the trust or transfer any assets without the consent of the other. 403 B.R. at 821. The particular trust in *Bellingroeher* possessed "the essential restrictions against severability and transferability as entireties property possesses," Judge Federman reasoned. *Id.* at 822. Judge Federman also noted that, "for all intents and purposes, the Bellingroehers are restricted in transferring their property in the exact same way they were when the property was held in their names as tenants by the entireties." *Id*. at 821.

Against this backdrop, Missouri enacted RSMo § 456.950 in 2011. Section 456.950.1 defines a QST as a trust with essentially two elements. The first element – not in dispute here – is that is that the settlors of the trust must be a husband and wife when the trust is created. RSMo §

6

456.950.1(1). The second element governs how the trust property is held and administered, and provides settlors one of three options: that the property be held and administered (a) in one trust for the benefit of both settlors; (b) in two separate shares of one trust for the benefit of both settlors; or (c) a combination of both. RSMo § 456.950.1(2).

The impact of a particular trust constituting a valid QST under RSMo § 456.950 is significant. Section 456.950.3 in effect deems property held in a valid QST as TBE property, and by legislative fiat prevents severance of TBE property upon its transfer to a valid QST. Section 3 states in relevant part:

> All trust property … that is deemed for purposes of this section to be held as tenants by the entirety … shall have the same immunity from the claims of the separate creditors of the settlors as would have existed if the settlors had continued to hold that property as husband and wife as tenants by the entirety. Property … held by a husband and wife as tenants by the entirety … shall be conclusively deemed for purposes of this section to be held as tenants by the entirety upon its transfer to the qualified spousal trust.

RSMo § 456.950.3. Moreover, RSMo § 456.950.3 continues the trust property's immunity from claims of separate creditors "so long as both settlors are alive and remain married, and the property, proceeds, or income continue to be held in the trust by the trustee of the qualified spousal trust." A QST may also "contain any other trust terms that are not inconsistent with the provisions of this section." RSMo § 456.950.2.

In sum, for TBE property transferred into a QST trust to earn the continued protection that TBE property enjoys from separate creditors, RSMo § 456.950 recognizes the same essential restrictions against severability and transferability as TBE property possesses: that the settlors as beneficiaries "act together"; that each have the right to hold property or receive distributions from "the entire trust"; and that these rights continue during the joint lives of the settlors and for the survivor's life. These are, in the words of Judge Federman, statutory requirements that, "for all intents and purposes," impose the same restrictions on transfers of the property held in a valid

7

QST as when it was held as TBE property outside of a QST. *In re Bellingroeher,* 403 B.R. at 821–22.

### *Is the Brewer Trust a Valid QST under RSMo § 456.950?*

With the elements of a valid QST firmly in mind, we now turn to the terms of the BREWER TRUST. The relevant provisions of the BREWER TRUST are contained in two sections. Article I, Section B, entitled "Primary Trustees" provides with respect to the assets:

> Either or both of us may exercise dominion and control over any and all of the trust assets, except as to amendment or revocation of this trust, which shall be pursuant to the provisions of Article Three. Upon the death of one of us, the survivor shall continue to act as the primary trustee of this trust with full power and authority to deal with any and all of the assets of this trust in any manner that said survivor sees fit, except as otherwise provided in Article Two and/or Article Three of this trust. *During the existence of this trust, each grantor shall have the right to partition, enabling such grantor to restrict, transfer, or withdraw one-half of the assets in this trust."*

(emphasis added).

Article I, Section G, "Primary Beneficiaries" reinforces the right to partition, providing:

> We hereby designate ourselves as the primary beneficiaries of this trust. As long as we or the survivor of us shall live, we or the survivor of us will have the exclusive right to the use and benefit of the income and the assets of this trust, *except as to the spouse's one half of the assets if the assets are partitioned* pursuant to the preceding provisions of Article One.

(emphasis added).

Comparing this language to the required terms in RSMo § 456.950 leads to an inescapable conclusion: that although the BREWER TRUST preserves the survivorship feature of TBE property, it does not prevent an individual spouse from severing the trust property and withdrawing half of the property. Rather, the BREWER TRUST expressly excepts from the Brewers' power to enjoy the whole property "*the spouse's one half of the assets if the assets are partitioned."* The right to partition is not only fundamentally inconsistent with the requirement that "each settlor hav[e] the right to distributions … from the entire trust for the joint lives of the

8

settlors," but is inconsistent with the nature of TBE property itself – that of restricting one spouse from unilaterally conveying or burdening the property.

Based on the plain language of the BREWER TRUST, the Court is compelled to conclude that the BREWER TRUST is not a valid QST under RSMo § 456.950, since it does not provide that "each settlor has the right to receive distributions of income or principal… from the entire trust for the joint lives of the settlors and for the survivor's life" but rather contains a right to partition that is inconsistent with the QST's statutory requirements. Moreover, the Court must conclude based on the terms of the BREWER TRUST (and the absence of any other evidence) that the Brewers intended to sever the TBE property when they expressly made the property subject to a right to partition. Even if that was not the Brewers' intent, the right to partition is a right that devolved to the Chapter 7 Trustee by operation of 11 U.S.C. § 541(a). The Chapter 7 Trustee thus has the power to exercise the Brewers' right to sell and partition the home, notwithstanding its ownership by the BREWER TRUST. *In re Reuter*, 499 B.R. 655, 670–71 (Bankr. W.D. Mo. 2013).[6]

As a final matter, after the filing of this Chapter 7, the Missouri legislature amended RSMo § 456.950, arguably loosening the requirements for QSTs, by removing the requirement that the settlors "act together" and including a power to distribute trust property to beneficiaries other than the settlors.[7] The amendment took effect August 28, 2015, but purports to apply to "all trusts which fulfill the criteria set forth in this section for a qualified spousal trust regardless of whether such trust was created before, on, or after August 28, 2011." RSMo § 456.950.8

---

[6] The Bankruptcy Court in *Reuter* determined that the co-trustee's rights were property of the estate, but since the underlying asset was exempt, did not permit the Chapter 7 Trustee to revoke the trust and withdraw the asset, an insurance policy.

[7] The amendment also deletes the requirement that the settlors be "husband and wife" and instead requires the settlors be "married to each other." In addition, RSMo §456.950(2) now extends TBE protection to any property held in the QST "without regard to how such property was titled prior to it being so held," and purports to deem such property TBE property for purposes of "federal and state bankruptcy laws." RSMo § 456.950(2). No cases have interpreted these amendments, and the Court does not express an opinion on their effect.

(effective Aug. 28, 2015). Such amendment does not aid the Brewers, however; bankruptcy exemptions are determined as of the date of the filing of the petition. *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1199 (9th Cir. 2012); *In re Reuter*, 499 B.R. 655, 670 (Bankr. W.D. Mo. 2013) (determining that amendments to RSMo § 456.950 did not apply retroactively to determine bankruptcy exemptions under both the bankruptcy "snap-shot" rule and the Missouri Constitution).

## *Conclusion*

"The burden of proof is on the objecting party to demonstrate that a claimed exemption is not proper, and thereafter, the burden shifts to the debtor." *In re Story*, 536 B.R. 279, 284 (Bankr. E.D. Mo. 2015) (citing Fed. R. Bankr. P. 4003(c) and *Peoples' State Bank of Wells v. Stenzel*, 301 F.3d 945, 947 (8th Cir. 2002)).  Here, the plain language of the BREWER TRUST overcomes the presumption of the validity of the exemption, and the Brewers offered no other evidence. The Court therefore concludes that the Chapter 7 Trustee has met his burden of proof in establishing that the BREWER TRUST is not a valid QST and therefore that the transfer of the Brewers' home into the BREWER TRUST severed the TBE. In the alternative, the Chapter 7 Trustee possesses as property of the estate a right to partition the home. For these reasons, the Brewers' claim of exemption in the home at 403 Sunny Brook, in Carl Junction, Missouri, is DENIED; the Trustee's objection to the exemption is GRANTED. A separate order will issue.

DATED: December 22, 2015

/s/ Cynthia A. Norton
United States Bankruptcy Judge

Parties to receive electronic notice.